IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JOHNNIE SHAFFER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-114 |
| | ) | |
| JASON MEDLIN, Warden; | ) | |
| MIKE QUINN, Warden of Care and Treatment; | ) | |
| FNU HAMILTON, Unit Manager; | ) | |
| and MELODY TURNER, CEO of | ) | |
| Corrections Corporation of America, | ) | |
| | ) | |
| Defendants.[1] | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate incarcerated at Autry State Prison in Pelham, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 concerning events that occurred at Wheeler Correctional Facility ("WCF") in Alamo, Georgia. Because he is proceeding *in forma pauperis*, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

**I.   SCREENING OF THE AMENDED COMPLAINT**

   **A.   BACKGROUND**

Plaintiff names the following Defendants: (1) Jason Medlin, Warden at WCF; (2) Mike Quinn, Warden of Care and Treatment at WCF; (3) Mrs. Hamilton, Unit Manager at WCF; and

---

[1]The Court **DIRECTS** the **CLERK** to modify the docket and remove Corrections Corporation of America because Plaintiff no longer names it as a Defendant in his amended complaint. (Doc. no. 1, pp. 1, 4.)

(4) Melody Turner, CEO of Corrections Corporation of America. (See doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On July 23, 2014, Plaintiff was assigned to a top bunk in lockdown unit 400-C despite his medical profile for a bottom bunk assignment due to back and neck injuries. (Id. at 5.) Plaintiff also has a medical profile to not lift over twenty pounds from these same injuries. (Id.) For four straight days, he showed his medical profile to Defendant Hamilton and requested she move him to a bottom bunk, but she refused. (Id.) She continued to "not honor" Plaintiff's medical profile for two weeks. (Id.)

On August 10, 2014, Plaintiff showed Defendant Quinn his medical profile and told him he was forced to sleep on the floor because he was not able to climb up to his assigned bunk. (Id.) Defendant Quinn told Plaintiff he would look into it. (Id.) When Plaintiff did not hear back for a few days, he wrote two letters to Defendant Quinn. (Id.) Plaintiff never received a response. (Id.)

On August 20, 2014, Plaintiff explained the situation to Defendant Medlin and showed him his medical profile. (Id.) Defendant Medlin told Plaintiff he "did not have time to worry about medical profiles" and directed Plaintiff to resolve the issue with the unit manager, Defendant Hamilton. (Id.) Plaintiff directed his issue to Defendant Hamilton on August 25, 2014, but she still refused to move him. (Id.)

Sometime in August, Defendant Turner visited WCF. (Id. at 6.) Plaintiff explained the situation to Defendant Turner and showed her his medical profile when she was making rounds. (Id.) Defendant Turner, like Defendant Medlin, directed Plaintiff to resolve the issue with the unit manager. (Id.)

On August 27, 2014, Plaintiff filed an emergency grievance. (Id. at 5.) On September 2, 2014, the grievance was deemed non-emergency and Plaintiff was told he would be moved. (Id. at 6.) Although Plaintiff states he was never moved, he then says he was moved eight days later on September 10, 2014 and assigned a bottom bunk in the segregation unit, even though he had not committed a disciplinary infraction. (Id.)

In the interim, Plaintiff slept on the floor for forty-six days, which exacerbated his neck pain. (Id.) Due to this increased neck pain, he has received painkillers and the doctor has reduced his medical profile to not lift over ten pounds. (Id.)

As to the prison grievance procedure, Plaintiff filed a formal grievance after his emergency grievance was deemed non-emergency but did not appeal the formal grievance to the highest level possible in the administrative procedure because he was never given a response to his formal grievance. (Id. at 3-4.) Plaintiff seeks damages for his pain and suffering, demotion of Defendant Hamilton, termination of Defendants Medlin and Quinn from their jobs, and letters of apology from all Defendants. (Id. at 7.)

**B.  DISCUSSION**

Plaintiff's amended complaint should be dismissed because of his failure to exhaust administrative remedies. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008); Clark v. Georgia Bd. of Pardons

3

and Paroles, 915 F.2d 636, 640-41 (11th Cir. 1990). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Because of the date of the incident that Plaintiff alleges, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of

4

Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on December 10, 2012. Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. An inmate may file a grievance "about any condition, policy, procedure, or action or lack thereof that affects the offender personally." SOP IIB05-0001 § VI(B)(1). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. SOP IIB05-0001 § VI(D)(1)-(5). Once the Counselor gives the grievances to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. SOP IIB05-0001 § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. SOP IIB05-0001 § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation, the Grievance Coordinator will appoint a staff member to investigate the complaint. SOP IIB05-0001 § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or their designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. SOP IIB05-0001 § VI(D)(7). The inmate then has seven calendar days from the date they receive the response to file a Central Office Appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to respond. SOP IIB05-0001 § VI(E). If the time allowed for the grievance response has expired and the inmate has not received a response, the inmate may either (1) file a Central Office Appeal or (2) wait until they receive a response to

the grievance to file a Central Office Appeal. Id. The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id.

Here, Plaintiff admits that he did not exhaust his administrative remedies prior to the commencement of this case, as is required under the PLRA, because he is currently waiting on a response to his formal grievance. (Id. at 4.) In order to properly exhaust, Plaintiff must use all steps of the available exhaustion procedure. Woodford, 548 U.S. at 93. Additionally, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of his amended complaint that Plaintiff failed to complete the entire grievance process prior to submitting the current complaint. (Doc. no. 1, pp. 3-4.) Therefore, Plaintiff's amended complaint should be dismissed without prejudice.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's amended complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 2nd day of March, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA